TANJI L. AUSTIN,

Plaintiff,

-vs-                                            Case No. 6:08-cv-1752-Orl-31GJK

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____

## REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

Plaintiff Tanji L. Austin (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI"). *See* Doc. No. 1. Claimant maintains the final decision of the Commissioner should be reversed and remanded because: the Appeals Council erred by denying review of the Administrative Law Judge's (the "ALJ") decision; the ALJ violated Claimant's due process rights by repeatedly interrupting Claimant's cross-examination of the Vocational Expert (the "VE") and by not allowing Claimant to question the VE about Claimant's oxygen use; the ALJ failed to elicit testimony and make findings about the side-effects of Claimant's medications; and the ALJ failed to make findings about Claimant's obesity and its effect on her ability to perform sedentary work. For the reasons set forth below, it is **RECOMMENDED** that the

Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of Section 405(g).**

## I.     BACKGROUND

Claimant was born on September 21, 1962, and Claimant completed high school. R. 59, 581.  Claimant's past employment experience includes working as a cashier, line cook or short-order cook, bartender, caterer, nursing assistant, and linen room attendant.  R. 115, 608-09.  Claimant has not engaged in substantial gainful activity since January 1, 2004.  R. 20, 582. On January 8, 2004, Claimant filed an application for a period of disability, disability insurance benefits, and SSI alleging an onset date as of April 28, 2003.  R. 28, 32, 59.  At the hearing before the ALJ, Claimant amended her alleged onset date to January 1, 2004.  R. 579. Claimant alleges disability due to diabetes, Little's Syndrome, hypertension, hypokalemia, fatigue, shortness of breath, weakness, and chest pain.  R. 95.

## II.     RELEVANT MEDICAL RECORD

### A.  Halifax Medical Center

The medical record reveals that between April 2, 2003 and June 27, 2006, Claimant presented numerous times to the emergency room at Halifax Medical Center complaining of chest pains, shortness of breath, headaches, weakness, and fatigue.  R. 149-61, 180-82, 189-90, 213-26, 243-52, 272-76, 290-92, 301-03, 310-20, 352-53, 487-93, 508-18, 536-48.  On April 2, 2003, Claimant presented to the emergency room "with sudden onset of weakness, shaking and a pushing sensation of the chest that was not painful."  R. 149.  Claimant denied any shortness of breath, but stated palpitations were frequent.  R. 151.  Claimant was admitted to the hospital with a primary diagnosis of arrhythmia with evidence of ventricular bigeminy.  R. 149.  Claimant was

also diagnosed with an electrolyte imbalance, hypertension, diabetes mellitus type II, hypokalemia, hyponatremia, and obesity. R. 149-50, 154. Claimant's electrolyte imbalance and ventricular bigeminy were corrected and no evidence of a myocardial ischemia or infarction was noted, although Claimant did have a short burst of atrial tachycardia and brief palpitation without associated lightheadedness. R. 149-50, 156, 159. 168. Electrocardiogram showed a normal sinus rhythm, but nonspecific anterior and lateral T-wave abnormalities. R. 156, 163. A stress test was negative. R. 149-50. Claimant's potassium levels were low, but corrected. R. 150. Dr. Glenn Rayos concluded that "[a]ll and all clinical suspicion for acute coronary syndrome is low." R. 156.

On April 18, 2003, Claimant presented to the emergency room complaining of a severe left-side headache with associated dizziness. R. 180. Claimant denied any chest pain or shortness of breath. R. 180. The medical record states that "all systems [were] reviewed and found to be negative." R. 180. Specifically, Claimant's cardiovascular system was "regular" and Claimant's chest was "clear." R. 181. Due to Claimant's diabetes, a basic metabolic profile was obtained and "[t]his was clinically unremarkable." R. 181. However, Claimant's potassium levels remained low. R. 181.

On April 24, 2003, Claimant presented complaining of left-side chest pain and left shoulder pain. R. 189. Claimant denied any shortness of breath, but stated that the chest pain was 9 out of 10. R. 189. Physical exam revealed that Claimant's lungs were clear and Claimant had a normal and regular sinus rhythm. R. 190. The record reveals that Claimant's symptoms were related to hypokalemia. R. 190. Claimant was prescribed Lortab and Robaxin for pain

management.  R. 190.  On May 14, 2003, Claimant reported much improvement and no side-effects from the medications.  R. 198.

On May 28, 2003, due to continued complaints of chest pain, Claimant underwent a left heart catheterization, coronary angiogram, left ventriculogram, and right femoral arteriogram.  R. 214.  The emergency room notes show that the Claimant could not give a good history "because it seems like [the chest pain] has multiple changes in characteristics.  Sometimes it lasts for a few minutes, sometimes it lasts a whole day, sometimes it feels worse when she takes a deep breath, sometimes it does not even matter if she does take a deep breath or cough.  The pain sometimes is associated with shortness of breath or dizziness."  R. 217.  Myocardial infarction was ruled out.  R. 217.  The procedures revealed: "minimal irregularities of the epicardial coronary arteries; normal left ventricular systolic function; and elevated left ventricular end-diastolic pressure."  R. 215.  X-rays of the chest showed that the lungs were clear and the heart and pulmonary vascularity were normal.  R. 236.  Dr. Ashraf S. Elsakr recommended diet control for hypertension and, if the chest pain recurred, further investigation of the gastrointestinal tract.  R. 216.  The discharge record shows that Claimant could return to work on August 2, 2003.  R. 213.

On June 22, 2003, Claimant presented again complaining of chest pain which had been occurring intermittently over the past two months.  R. 245.  Claimant described the pain as mild or a 1 to 2 on a scale of 1 to 10.  R. 245.  Claimant also complained of muscle cramping and weakness.  R. 245.  Claimant's heart rhythm was normal.  R. 246. Claimant's muscle cramps were "likely related to hypokalemia."  R. 246.  Claimant's potassium levels were again low.  R. 248.  Claimant was referred to a nephrologist.  R. 246.  On June 27, 2003, an ECG Pulmonary Function test showed: normal spirometry; normal lung volumes; normal diffusion capacity; and

no response to acutely inhaled bronchodilator. R. 257. An MRI of the abdomen was also normal. R. 258-61.

On July 20, 2003, Claimant presented because she was short of breath while lying down. R. 276. Physical examination showed that her chest was "[e]ntirely clear." Dr. John Prairie stated: "I have checked her chest for tenderness, and rather peculiar. When I ask 'is this tender, or is that tender,' instead of answering with a one word answer, [C]laimant gasps to me with a lengthy answer 'let me catch my breath before I answer.'" R. 276. EKG of the chest was normal, and chest x-rays were also normal. R. 276. On July 21, 2003, Claimant presented for evaluation of her recurrent low potassium levels. R. 272. Claimant reported no chest pains, palpitations or shortness of breath. R. 272. Dr. Steve Bohannon's impression was mild hypokalemia. R. 274.

On August 6, 2003, Claimant presented to the emergency room due to low potassium levels. R. 290. Claimant denied any other symptoms other than a light headache. R. 290. Physical examination showed no chest pain, chest pressure, chest discomfort, palpitation, or shortness of breath. R. 290. Claimant had a normal respiratory effect and normal sinus rhythm with no murmurs. R. 291. Claimant's potassium levels remained low. R. 291. Claimant was diagnosed with a history of chronic hypokalemia. R. 291.

On September 1, 2003, Claimant presented with chest pain without shortness of breath. R. 301. Physical examination revealed some sharp and reproducible chest pain, but no palpitations. R. 301. EKG and chest x-rays were normal. R. 301. Claimant was diagnosed with intercostals muscle strain and a history of hypertension and diabetes. R. 302.

On December 14, 2003, Claimant again presented to the emergency room complaining of chest pain. R. 310. Claimant was on her first day back to work and around noon began to experience chest pain. R. 312. Claimant was diagnosed with non-cardiac chest pain, hypopotassemia, controlled non-insulin dependent diabetes mellitus, hypertension, obesity, and esophageal reflux. R. 310. The emergency room records show that Claimant was also recently diagnosed with Liddle's Syndrome, extreme hypokalemia, and required large doses of potassium. R. 310.[1] Claimant underwent a second left cardiac catheterization, angiogram, and coronary arteriograpy using two catheters. R. 310. The procedures showed "normal coronary arteries, normal left ventricular function, ejection fraction of 55%." R. 311. EKG showed a normal sinus rhythm, but a non-specific anterior T wave abnormality. R. 317. Chest x-rays were also unremarkable. R. 332.

On March 25, 2004, Claimant presented complaining of chest pain. R. 352. Claimant stated that she had been taking Nitro Spray for chest pains with some success, but that night the Nitro Spray did not work. R. 352. Physical examination revealed normal heart rhythms and Claimant "look[ed] and felt well the whole time." R. 353.

On February 2, 2006, Claimant was admitted to Halifax Medical Center suffering from pneumonia. R. 536-37.[2] On April 18, 2006, Claimant presented to the emergency room complaining of non-radiating chest pain and generalized weakness. R. 517. Claimant reported running out of potassium supplements ten days prior and Claimant began feeling exhausted. R. 512. Physical examination revealed no pain, clear chest sounds, and a regular heart rate and

---

[1] According to Halifax Medical Center's records, Liddle's Syndrome "is a rare disorder that is comprised of hypertension, metabolic alkylosis and severe hypokalemia." R. 509.

[2] The treatment records from Halifax Medical Center from February 2, 2006 through June 27, 2006, were presented for the first time to the Appeals Council. R. 6.

rhythm. R. 517. EKG and chest x-rays were normal. R. 518. Claimant's potassium levels were low, but electrolytes were normal. R. 518. Due to Claimant's history of diabetes, hypertension, morbid obesity, obstructive sleep apnea, and Liddle's Syndrome, Claimant was admitted to the hospital to rule out a myocardial infarction. R. 508, 510. Claimant's diagnosis was chest pain of uncertain etiology and hypokalemia with generalized weakness. R. 518. Halifax's records show that Claimant was taking the following medications: oxygen 2 liters by nasal cannula; sublingual nitroglycerin spray; Metformin 5mg twice daily; Aldactone 50 mg twice daily; Lexapro 10 mg daily; Nifedipine 60mg daily; Glipizide 5 mg twice daily; Hydrochlorothiazide 2 tablets twice daily; Temazepam 30mg; Flexeril 10 mg; and Potassium Chloride between 180 to 360 mEq daily. R. 509.

Dr. Ahmad Shamsin treated Claimant during Claimant's admission. R. 512-13. Dr. Shamsin's notes state:

> The patient is well-known to me. I actually evaluated her in my office three to four months ago for a complaint of chest pain and preoperative evaluation for gastric bypass and ischemic evaluation at that time was not feasible because of the patient's morbid obesity. Currently the patient is chest pain free.

R. 513. Claimant's physical examination was normal. R. 513. Dr. Shamsin's impressions were: atypical chest pain; type II diabetes mellitus; hypertension; morbid obesity; obstructive sleep apnea; and Liddle's Syndrome with hypokalemia. R. 513. Dr. Shamsin concluded:

> The patient has been ruled out for myocardial infarction. . . . I am unimpressed with her chest pain. This is most likely musculoskeletal. I agree with the current management of replacing potassium.

R. 513. Claimant's potassium levels were corrected and Claimant was discharged. R. 513.

On June 27, 2006, Claimant presented to the emergency room complaining of chest pain. R. 487. Claimant was admitted to rule out a myocardial infarction. R. 487. Physical examination, EKG, and chest x-rays were normal, but Claimant's potassium levels were low. R. 487-93. Claimant's potassium levels were corrected, Claimant's medications were continued, and Claimant was discharged. R. 487-93.

### B. Dr. Robert Walker

The medical record shows that from September 25, 2003 through June 24, 2005, Claimant was treated by Dr. Robert Walker. R. 333-35, 401-04, 444-56. Dr. Walker's handwritten treatment notes show that on September 25, 2003, Claimant was complaining of fatigue, weakness, and headaches. R. 335. Claimant was diagnosed with hypokalemia and referred to a nephrologist. R. 335. Dr. Walker's notes show that Claimant was to remain off work until seeing the nephrologist. R. 335.

On December 4, 2003, Dr. Walker's notes reveal that the nephrologist diagnosed Claimant with Liddle's Syndrome, but Claimant was feeling better. R. 334. Dr. Walker's assessment states that Claimant was capable of returning to "work light duty." R. 334. On or about December 22, 2003, Claimant returned for a follow-up with Dr. Walker. R. 335. Claimant retained the diagnosis of Liddle's Syndrome, Dr. Walker prescribed a nitroglycerin spray, and his notes state Claimant would be applying for disability insurance benefits. R. 333. Dr. Walker issued a certificate stating that Claimant was to remain off work until further notice. R. 484.[3]

On April 27, 2004, Dr. Walker diagnosed Claimant with type II diabetes, hypertension, Liddle's Syndrome, chronic hypokalemia, shortness of breath, and chest pain. R. 455. Dr.

---

[3] Dr. Walker's December 22, 2003 treatment notes and opinion that Claimant was to remain off work until further notice was presented, for the first time, to the Appeals Council. R. 6, 484. Thus, the ALJ did not have the benefit of Dr. Walker's December 22, 2003 opinion.

Walker's notes show that a recent cardiac catheterization was negative and Dr. Walker referred Claimant to a "GI" and ophthalmologist. R. 155. On May 3, 2004, a double contrast upper gastrointestinal examination was unremarkable. R. 406. On June 10, 2004, Dr. Walker diagnosed Claimant with gallstones and referred Claimant for a cholecystectomy. R. 453. On February 18, 2005, Dr. Walker prescribed two liters of oxygen for Claimant to use on an as needed basis for twelve months. R. 403. On March 31, 2005, Dr. Walker prescribed a BiPAP machine and sleeping mask for Claimant's sleep apnea and chronic obstructive pulmonary disease ("COPD"). R. 402.

### C. Drs. Chakrapani and Kumar – Nephrologists

The medical record shows that Claimant was treated by Drs. Jaideep Chakrapani and Arun Kumar, both nephrologists, from October 14, 2003 through March 16, 2005. R. 371-78, 421-22. On November 18, 2003, Dr. Chakrapani diagnosed Claimant with Liddle's Syndrome, hypertension, obesity, and possible diabetes. R. 374. Dr. Chakrapani recommended that Claimant continue taking her potassium supplements and Amiloride. R. 375. On March 16, 2005, Claimant presented to Dr. Kumar, a colleague of Dr. Chakrapani, for a follow-up. R. 421-22. Dr. Kumar's notes show that Claimant had recently been diagnosed with sleep apnea and was on home oxygen and a BiPAP machine. R. 421. Other than Claimant's obesity, Claimant's physical examination was unremarkable. R. 42. Dr. Kumar stated the following:

> I did review some of the previous notes of my colleague, Dr. Chakrapani who seems to think that the patient has Liddle's syndrome. He initiated treatment with [A]miloride, which seems to have helped in controlling her severe hypertension. She is also on very high doses of potassium supplements and in spite of that the most recent lab test showed that she was hypokalemic. The patient did say that she has not been very compliant with the [potassium] supplements. This is mainly because of the fact that

> she did not tolerate the potassium powder. She says this was
> causing chronic diarrhea. I have stopped the powder preparation
> and given her prescription for potassium chloride pills. Hopefully,
> she should be able to tolerate this and being compliant with the
> medications will help to improve her potassium levels.

R. 421-22. The record does not contain any other treatment records from Drs. Chakrapani or Kumar.

### D. Dr. Jesus Diaz

On January 21, 2005, Claimant presented to Dr. Jesus Diaz complaining of four months of fatigue, malaise, and loud snoring. R. 460. Dr. Diaz's handwritten notes state that Claimant was morbidly obese, but had an extensive cardiac work-up which showed her heart was normal. R. 460. Dr. Diaz's assessment showed that Claimant's symptoms were "most likely multifactorial" as result of de-conditioning, morbid obesity, and a diastolic dysfunction. R. 460. Dr. Diaz's treatment plan states that Claimant "must lose weight." R. 460. On February 25, 2005, Dr. Diaz referred Claimant to Dr. James D. Curry for a polysomnography. R. 459. Dr. Curry diagnosed Claimant with severe obstructive sleep apnea. R. 459. Dr. Curry reported that Claimant performed better with a BiPAP machine and a full face mask. R. 459. On June 24, 2005, Claimant presented to Dr. Diaz for a follow-up. Dr. Diaz's notes show that Claimant had been prescribed a BiPAP machine for sleep apnea and Claimant continued to need to lose weight. R. 458.

## III.    OPINION EVIDENCE

As set forth above, on December 4, 2003, Dr. Walker's treatment notes state that Claimant is capable of performing light duty work. R. 334. However, on December 22, 2003,

Dr. Walker issued a certificate stating that Claimant should not work until further notice. R. 484. Claimant submitted this document, for the first time, to the Appeals Council. R. 6.

On February 23, 2004, Dr. Donald W. Morford, a non-examining state agency consultant, provided a Residual Functional Capacity ("RFC") evaluation based on a records review. R. 344-51. Dr. Morford opined that Claimant suffers primarily from Liddle's Syndrome, hypokalemia, hypertension, and diabetes. R. 344. As to Claimant's RFC, Dr. Morford opined that Claimant could occasionally lift 20 pounds, frequently lift 10 pounds, stand for about six hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and Claimant was unlimited in the ability to push and/or pull. R. 345. Dr. Morford based his RFC on Claimant's diabetes, hypertension, hypokalemia, no evidence of myocardial infarction, minimal irregularities in the coronary catheterization, hypopotassemia, Liddle's Syndrome, and the minimal physical findings in the record to date. R. 345-46. Dr. Morford opined that Claimant would have occasional postural limitations and should avoid concentrated exposure to extreme heat and cold as well as hazards. R. 346-48. Dr. Morford concluded that Claimant's diagnoses are consistent with the medical record and the RFC. R. 349. Dr. Morford also concluded that Claimant's treatment and/or medications should help her Liddle's Syndrome. R. 349.

On April 4, 2004, Dr. Keith R. Holden, a non-examining state agency consultant, provided an RFC based on a records review. R. 363-70. Dr. Holden opined that Claimant suffers primarily from Liddle's Syndrome, morbid obesity, hypertension, and non-cardiac chest pain. R. 363. As to Claimant's RFC, Dr. Holden concluded that Claimant could occasionally lift 20 pounds, frequently lift 10 pounds, stand for about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and Claimant was unlimited in the ability to push and/or pull. R.

364. Dr. Holden based his opinion on Claimant's history of "normal renal function with episodic mild hypokalemia attributed to Liddle Syndrome," Claimant's episodic hospitalizations for non-cardiac chest pain, normal cardiac testing, normal laboratory testing except for low potassium, hypertension, and obesity. R. 364. Dr. Holden opined that Claimant does not have any other limitations other than Claimant should avoid hazards due to Claimant's Liddle's Syndrome. R. 365-67. Dr. Holden concluded that Claimant's "multiple somatic complaints in the setting of normal exams and negative diagnostic studies except for mild episodic hypokalemia is [consistent with] symptom exaggeration." R. 368.

On July 6, 2005, Dr. David Turner completed a Pulmonary RFC Questionnaire (the "PRFC"). R. 463-67. While Dr. Turner appears to be a doctor in the same office as Dr. Walker, the medical record does not contain any document indicating whether Dr. Turner ever treated or examined Claimant. *See* R. 403, 453, 467. In the PRFC, Dr. Turner was specifically asked about the frequency and length of his contact with the Claimant, but Dr. Turner did not answer that question. R. 463.

Dr. Turner reported Claimant suffers from hypertension, diabetes, dyspnea, hypokalemia, fatigue, GERD, and Liddle's Syndrome. R. 463. Dr. Tuner described Claimant's symptoms as shortness of breath, chest tightness, wheezing, edema, fatigue, palpitations, and coughing. R. 463. Dr. Turner stated that Claimant suffers from acute breathing attacks that are precipitated by upper respiratory infections, allergens, exercise, emotional stress, irritants, cold air or changes in the weather, and physical exertion. R. 463. Dr. Turner characterized the severity of Claimant's attacks as moderate to severe. R. 463. Dr. Turner stated that Claimant was incapacitated for an average of up to 48 hours per attack. R. 464. Dr. Turner further stated that Claimant's

symptoms and functional limitations are consistent with Claimant's impairments. R. 464. According to Dr. Turner, Claimant's impairments would constantly interfere with Claimant's ability to concentrate during simple work tasks. R. 464. Dr. Turner concluded that Claimant is incapable of even low stress jobs. R. 464. Dr. Turner also stated that Claimant's medications cause side-effects of upset stomach, edema, and insomnia. R. 464. Dr. Turner also opined that Claimant can sit and stand/walk for less than two hours during a normal eight hour workday, and can never lift "less than 10 lbs." R. 465. Dr. Turner states that his opinion regarding Claimant's symptoms and limitations dates back to June 2, 2003. R. 467.

On September 11, 2006, Dr. Robert Sessions filled out a form stating that Claimant was unable to work. R. 482. Dr. Sessions concluded that Claimant's condition was permanent. R. 482. While the medical record does not contain treatment records from Dr. Sessions, the form states that Claimant was treated by Dr. Sessions on September 11, 2006 and that treatment would be ongoing. R. 482. Dr. Sessions' opinion was not available to the ALJ at the time of the decision and Claimant provided the opinion to the Appeals Counsel during Claimant's request for review. R. 6, 482.

On September 20, 2006, Dr. Vinod B. Patel, a nephrologist who works in the same office as Drs. Kumar and Chakrapani, opined that Claimant is unable to work. R. 481. Dr. Patel opined:

> [C]laimant has congenital problem[s] of severe hypokalemia requiring many medications for it and her potassium level still remains low. Also she has shortness of breath requiring [oxygen] at home with [her] CHF and hypertension as well as diabetes mellitus. The patient is unable to work under these conditions.

R. 481.   Dr. Patel's opinion was not available for the ALJ at the time the decision was rendered and Claimant provided Dr. Patel's opinion to the Appeals Council during Claimant's request for review.   R. 6, 27.

## IV.   PROCEEDINGS BELOW

Claimant's application was denied initially and upon reconsideration.   R. 36-42, 474-75, 477-80.   On May 5, 2005, Claimant requested a hearing before an ALJ and, on August 18, 2005, a hearing was held before the Honorable Edward Bayouth-Babilonia.   R. 43, 576-620.   At the hearing, Claimant was represented by counsel.   R. 576.   Claimant and VE, Robert Bradley, were the only persons to testify.   R. 576.

On August 18, 2006, the ALJ issued a decision finding Claimant not disabled.   R. 18-27. The ALJ made the following significant findings:

1. Claimant meets the insured status requirements of the Social Security Act through June 30, 2006;

2. Claimant has not engaged in substantial gainful activity since January 1, 2004, the alleged amended onset date;

3. Claimant has the following severe impairments: hypertensive renal disease; Liddle's Syndrome; nephoric syndrome; obesity; hypokalemia; diabetes mellitus, and obstructive sleep apnea;

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that in an 8-hour day, on a function-by-function basis, the [C]laimant can stand/walk for 6 hours; sit up to 6 hours; lift 20 pounds occasionally; 10 pounds or less more frequently; no climbing; no work at heights or around dangerous machinery; avoid concentrated exposure to extreme cold or extreme heat;

6. The [C]laimant is capable of performing her past relevant work as a cashier; short order cook; caterer helper and kitchen food assembler;

7. The [C]laimant was born on September 21, 1962 and was 41 years old on the alleged amended onset date, which is defined as a younger individual age 18-44. The [C]laimant is currently 43 years old, also a younger individual;

8. The [C]laimant has at least a high school education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Meidcal-Vocational Rules as a framework supports a finding that the [C]laimant is "not disabled", whether or not the [C]laimant has transferable job skills;

10. Considering the [C]laimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [C]laimant can perform; and

11. The [C]laimant has not been under a "disability," as defined in the Social Security Act, from January 1, 2004 through the date of the decision.

R. 18-27. Thus, the ALJ determined that Claimant was not disabled. R. 27. Regarding the

opinion evidence, the ALJ stated the following:

> Robert Walker, M.D., the [C]laimant's primary care physician, opined the [C]laimant was capable of light duty work.
>
> The State agency medical consultant, Donald Warren Morford, M.D. F.A.C.P., reviewed the record and initially concluded that the [C]laimant has the following [RFC]: she can lift/carry 20 pounds occasionally and 10 pounds or less more frequently; stand/walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; push/pull unlimited; occasionally climb – ramp/stairs/ladder/rope/scaffolds; balance; stoop; kneel; crouch; crawl; no manipulative limitations; no visual limitations; avoid concentrated exposure to: extreme cold, extreme heat; hazards (machinery, heights, etc.).
>
> The State agency medical consultant, Keith Holden, M.D., reviewed the record upon reconsideration and reached the same conclusion, except that [C]laimant had no limitation to extreme cold or extreme heat. Dr. Holden found the [C]laimant's complaints were consistent with symptom exaggeration.
>
> David Turner, M.D. provided a restrictive [RFC]. It appears Dr. Turner is from the same office as Dr. Walker and may have had

> access to the [C]laimant's medical records, but there is no
> indication Dr. Turner every [sic] physically or otherwise examined
> the [C]laimant. The opinion of the treating physician and State
> agency's Board Certified Internal Medicine physicians are given
> more weight.
>
> Thus, after considering all the evidence, including the [C]laimant's
> testimony, there is no evidence that the impairments impose
> limitations beyond those assessed in the [RFC] above.

R. 24. Thus, the ALJ gave more weight to Dr. Walker's December 4, 2003 opinion and the opinions of the non-examining state agency physicians than to the opinion of Dr. Turner. R. 24. Again, at the time of the decision, the ALJ did not have Dr. Walker's December 22, 2003 certificate stating Claimant was to remain off work until further notice, Dr. Sessions' September 11, 2006, form stating that Claimant was permanently unable to work, or Dr. Patel's September 20, 2006, opinion that Claimant was unable to work. R. 6, 481-82, 484.

Claimant timely requested review of the ALJ's decision before the Appeals Council. R. 570. On October 16, 2006, Claimant presented written argument and additional evidence to the Appeals Council. R. 481-571, 572-75. Claimant argued that the Appeals Council should grant review of the ALJ's decision because: 1) the decision contained inaccuracies and was not supported by substantial evidence; 2) the ALJ erred as a matter of law by rejecting the opinions of Drs. Walker and Tuner that Claimant was restricted to less than sedentary work; and 3) the ALJ made an error of law by rejecting the opinion of Dr. Patel that Claimant was incapable of working. R. 572-57.[4]

On August 19, 2008, the Appeals Council denied review stating that it had "considered

---

[4] Claimant's second and third arguments to the Appeals Council are peculiar considering the ALJ did not have the opinions at issue at the time of his decision. Dr. Walker's December 22, 2003 opinion was submitted into the record for the first time at the Appeals Council. R. 6, 484. Dr. Patel's opinion was not issued until after the ALJ's decision and, therefore, could not have been submitted until after the ALJ's decision. R. 6, 16, 481.

the reasons you disagree with the decision . . . and the additional evidence . . . [but] [w]e found that this information does not provide a basis for changing the [ALJ's] decision."  R. 7-8.  On October 9, 2008, Claimant timely filed an appeal in this Court.  Doc. No. 1.  On February 27, 2009, Claimant filed a memorandum in support of her position on appeal.  Doc. No. 12.  On April 28, 2009, the Commissioner filed a memorandum in support of the Commissioner's final determination.  Doc. No. 13.

## V.  THE PARTIES' POSITIONS

Claimant assigns four errors to the Commissioner's decision: 1) the Appeals Council erred by denying review based on the new and material evidence Claimant submitted; 2) the ALJ violated Claimant's due process rights by denying Claimant the right to cross-examine the VE; 3) the ALJ erred by failing to elicit testimony and make findings as to the side-effects of Claimant's medications as required by *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); and 4) the ALJ erred at step two of the sequential evaluation process by not making any findings regarding whether Claimant's obesity imposes significant work related limitations on her ability to perform sedentary work as required by Social Security Ruling 02-01p and *Walker v. Bowen*, 825 F.2d 996, 1001 (11th Cir. 1987).  Doc. No. 12 at 1-23.  Claimant requests that the Court reverse and remand the Commissioner's decision for a *de novo* hearing.  Doc. No. 12 at 22-23.

The Commissioner argues that substantial evidence supports his decision to deny Claimant's claims for a period of disability and disability insurance benefits, and SSI benefits. *See generally* Doc. No. 13 at 1-13.  The Commissioner maintains that: 1) the new evidence submitted to the Appeals Council, including Dr. Patel's opinion, does not render the ALJ's decision erroneous; 2) the ALJ did not violate Claimant's due process rights to such a degree that

a remand is warranted because Claimant suffered no prejudice; 3) to the extent Claimant alleged side-effects from her medications, the ALJ properly evaluated Claimant's allegations when considering Claimant's credibility; and 4) the ALJ specifically considered Claimant's obesity at step-two and found it to be a severe impairment. Doc. No. 13 at 1-13. Thus, the Commissioner requests that the Court affirm the decision below. Doc. No. 13 at 14.

## VI.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work

activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by

considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 CFR § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for

21

providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

## B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse

a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.[6]  Thus, a sentence-six remand is only appropriate where new evidence is presented, for the first time, to the district court.  *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1267 (11th Cir. 2007) ("Sentence six

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[6] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id*.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court.").

## VII.   ANALYSIS OF ALLEGED ERRORS

### Whether the Appeals Council Erred in Denying Review

In *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1259, 1262 (11th Cir. 2007), the Eleventh Circuit held that when new evidence is presented, for the first time, to the Appeals Council, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id*.   In such a case, the main issue for the reviewing court becomes "whether the Appeals Council correctly decided that the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence. . . .'" *Ingram*, 496 F.3d at 1266-67 (quoting 20 CFR § 404.970(b)).[7] *See also Piccuito v. Astrue,* Case No. 8:08-cv-2481-T-TGW, 2009 WL 5148922 at *4 (M.D. Fla. Dec. 28, 2009) ("[W]hen the Appeals Council considers new evidence and denies review, the district court . . . should determine whether the Appeals Council has correctly decided that the [ALJ's] findings are . . . contrary to the weight of all the evidence."); *Lee v. Astrue*, Case No. 3:08-cv-458-J-HTS, 2009 WL 1393503 at *2 (M.D. Fla. May 18, 2009) (finding that if new evidence is presented to the Appeals Council and review is denied, a reviewing court should determine whether the denial by the Appeals Council was

---

[7] 20 CFR § 404.970(b) provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*Id*.

erroneous because the ALJ's decision was contrary to the weight of the evidence in the entire record); *Samuels v. Astrue*, Case No. 3:08-cv-900-J-HTS, 2009 WL 1659620 at *2 (M.D. Fla. June 15, 2009) (same); and *Tucker v. Astrue*, Case No. 8:07-cv-621-T-TGW, 2008 WL 2811170 at *7 (M.D. Fla. July 21, 2008) (same).  "Upon finding such a violation, the appropriate remedy 'is to remand the matter to the Commissioner so that the administrative review that was improperly denied is undertaken.'"  *Samuels*, 2009 WL 1659620 at *2 (quoting *Tucker*, 2008 WL 2811170 at *7).

The new evidence submitted by Claimant to the Appeals Council contains three opinions from Claimant's treating physicians all asserting that Claimant's impairments prevent Claimant from working.  R. 481-482, 484.  As set forth above, on December 4, 2003, Dr. Walker opined that Claimant was capable of light duty work.  R. 334.  In his decision, the ALJ relied on that opinion and gave it significant weight.  R. 24.  However, Dr. Walker's more recent opinion, which was presented to the Appeals Council, states that as of December 22, 2003, Claimant was to remain off work until further notice.  R. 484.  Dr. Walker's December 22, 2003 opinion is clearly contrary to his earlier opinion, which the ALJ relied on in reaching his decision.  *See* R. 24, 334, 484.

At the time of the ALJ's decision, the ALJ did not have the benefit of Dr. Walker's more recent December 22, 2003 opinion concluding that Claimant could not work.  R. 6, 484. Similarly, the ALJ did not have the benefit of similar opinions from two of Claimant's other treating physicians - - Drs. Patel and Sessions.  R. 6. 481-82. Thus, the entire record now includes four opinions from Claimant's treating physicians, Drs. Walker, Turner, Patel, and Sessions, stating that Claimant is not capable of working.  R. 463-67, 481-82, 484.  Based on the

entire administrative record, the undersigned finds that the new evidence renders the Appeals Council's denial of review erroneous because the ALJ's decision is contrary to the weight of the evidence. Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** and **REMAND** the case to the Commissioner pursuant to sentence four of Section 405(g) for the appropriate administrative review.[8]

## VIII. <u>CONCLUSION</u>

Based on the above stated reasons, the undersigned **RECOMMENDS** that the Court:

1) **REVERSE and REMAND** the final decision of the Commissioner pursuant to sentence four of section 405(g);

2) Direct the Clerk to enter a separate judgment in favor of the Claimant; and

3) Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on February 2, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge

The Court Requests that the Clerk

---

[8] Based on the forgoing recommendation, it is unnecessary to address the remaining issues raised by the Claimant.

Mail or Deliver Copies of this Order to:

Richard A. Culberston
3222 Corrine Drive, Suite E
Orlando, FL 32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Edward Bayouth-Babilonia
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224